UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEE DAVID AUERBACH, on behalf of
himself and all others similarly situated,

                 Plaintiff,

v.

RITE AID CORPORATION,

                 Defendant.

Civil Action No. 12-0096

# OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.**
**1311 Mamaroneck Avenue**
**White Plains, New York 10605**
**Tel: (914) 517-5000**
*Attorneys for Plaintiff*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ...........................................................................................................1

I.      Standards Under Rules 8(a) and 12(b)(6) .................................................2

II.     Plaintiff Adequately Alleges Claims Under N.Y. General
        Business Law § 349 ..................................................................................3

        A.      Standards On A Motion To Dismiss A N.Y. General
                Business Law § 349 Claim ...........................................................4

        B.      Plaintiff  Adequately Pleads That Defendant's Deceptive Practices
                Are Consumer-Oriented ...............................................................4

        C.      Plaintiff Adequately Pleads That Defendant's Practices
                Are Deceptive ..............................................................................9

        D.      Plaintiff Adequately Pleads That Defendant's Deception Caused
                Him Injury ..................................................................................13

        E.      Plaintiff Need Not Allege Or Prove That He Was Subjectively Deceived .......14

III.    The Complaint More Than Sufficiently Pleads A Contract Between
        Plaintiff and Rite Aid...............................................................................18

        A.      Plaintiff Adequately Pleads A Contract Existed Between
                The Parties..................................................................................19

        B.      The Voluntary Payment Doctrine Does Not Bar Plaintiff's
                Contract Claim ...........................................................................21

IV.     Plaintiff Adequately Alleges A Claim For Unjust Enrichment...................23

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Abraham v. Penn Mut. Life Ins. Co.,
    No. 98 439, 2000 WL 1051848 (S.D.N.Y. July 31, 2000)..........................................8

Allstate Ins. Co. v. Lyons,
    No. 11-2190, 2012 WL 517600 (E.D.N.Y. Feb. 16, 2012) ................................5, 24

Banks v. Consumer Home Mortg., Inc.,
    No. 01-8508, 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ....................................11

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ....................................................................................2, 3

Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.,
    120 Misc. 2d 848, 467 N.Y.S.2d 471 (App. Term 1983) ........................................10

Brazil v. Dell Inc.,
    No. 07-01700, 2008 WL 4912050 (N.D. Cal. Nov. 14, 2008)..................................20

Bustamante v. First Fed. Sav. & Loan Ass'n of San Antonio,
    619 F.2d 360 (5th Cir. 1980) ........................................................................17

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) ........................................................................15

Chang v. First Colonial Sav. Bank,
    410 S.E.2d 928 (Va. 1991) ..........................................................................20

Citicorp N. Am., Inc. v. Fifth Ave. 58/59 Acquisition Co., LLC,
    70 A.D.3d 408 (1st Dep't 2010)....................................................................23

Cruz v. McAneney,
31 A.D.3d 54 (2d Dep't 2006) ........................................................................23

Cytyc Corp. v. Neuromedical Sys., Inc.,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998) ..............................................................10

Dank v. Sears Holding Mgmt. Corp.,
    59 A.D.3d 582 (2d Dep't 2009)......................................................................10

Dillon v. U-A Columbia Cablevision of Westchester, Inc.,
    292 A.D.2d 25 (2002)................................................................................23

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                    **Page**

Eaves v. Designs for Fin., Inc.,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011) ................................................................16, 17

Elacqua v. Physicians' Reciprocal Insurers,
    52 A.D.3d 886 (3d Dep't 2008)..........................................................................5

Erickson v. Pardus,
    551 U.S. 89 (2007) ...........................................................................................3

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
    375 F.3d 168 (2d Cir. 2004) ............................................................................3

Fashion Bug No. 2100 Of Batavia, Inc v. 425 West Main Associates LP,
    10 Misc.3d 1053A, 806 N.Y.S.2d 449 (4th Dep't 2006) ...........................22

F.T.C. v. Amy Travel Serv., Inc.,
    875 F.2d 564 (7th Cir. 1989) .........................................................................10

F.T.C. v. Windward Mktg., Inc.,
    No. 96-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ....................13

Fiorito v. Equitable Life Assur. Soc. of the U.S.,
    No. 3284/90, 1992 WL 12664963 (N.Y. Sup. Ct. Feb. 4, 1992)................24

First United Bank & Trust v. PNC Fin. Services Group, Inc.,
    667 F. Supp. 2d 443 (M.D. Pa. 2009)...........................................................17

Frequent Flyer Depot, Inc. v. American Airlines, Inc.,
    281 S.W.3d 215 (Tex. App. 2009) ................................................................21

Gaidon v. Guardian Life Ins. Co. of Am.,
    94 N.Y.2d 330 (1999).......................................................................................6

Galvan v. KDI Distribution Inc.,
    No. 08-0999, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) .......................13

Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch,
    593 F. Supp. 743 (S.D.N.Y. 1984) ...............................................................10

Gimbel Bros., Inc. v. Brook Shopping Centers, Inc.,
    118 A.D.2d 532 (2d Dep't 1986).....................................................................23

# TABLE OF AUTHORITIES
### (Cont'd)

**Cases**                                                                                      **Page**

Goshen v. Mutual Life Insurance Company of New York,
    98 N.Y.2d 314 (2002)...................................................................................4

Guggenheimer v. Ginzburg,
    43 N.Y.2d 268 (1977)..................................................................................11

Harary v. Allstate Ins. Co.,
    983 F. Supp. 95 (E.D.N.Y. 1997).................................................................9

In re Ahmadi,
    467 B.R. 782 (Bankr. M.D. Pa. 2012).........................................................16

In re Enron Corp. Sec., Derivative & "Erisa" Litig.,
    MDL No. 1446, 2003 WL 23316646 (S.D. Tex. Mar. 27, 2003) .............17

In re Static Random Access Memory (SRAM) Antitrust Litig.,
    No. 07-01819, 2008 WL 2610549 (N.D. Cal. June 27, 2008) ..................12

Johnson v. Capital City Ford Co.,
    85 So.2d 75 (La. Ct. App. 1955) ................................................................20

Kirby McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C.,
    15 A.D.3d 233 (1st Dep't 2005) .........................................................22, 24

Lefkowitz v. Great Minneapolis Surplus Store,
    251 Minn. 188, 86 N.W.2d 689 (1957) .....................................................19

Leonard v. Pepsico, Inc.,
    88 F. Supp. 2d 116 (S.D.N.Y. 1999) .........................................................19

Lim v. The.tv Corporation International,
    99 Cal. App. 4th 684 (2002)........................................................................20

M & T Mortg. Corp. v. White,
    736 F. Supp. 2d 538 (E.D.N.Y. 2010).........................................................7

M.V.B. Collision, Inc. v. Allstate Ins. Co.,
    728 F. Supp. 2d 205 (E.D.N.Y. 2010).........................................................5

MaGee v. Paul Revere Life Ins. Co.,
    954 F. Supp. 582 (E.D.N.Y. 1997)..............................................................8

iv

## TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                    **Page**

Manufacturers Hanover Trust Co. v. Chem. Bank,
    160 A.D.2d 113 (1st Dep't 1990) ................................................................24

Morris v. 702 E. Fifth St. HDFC,
    46 A.D.3d 478 (1st Dep't 2007) .................................................................18

NHS National Health Services Inc. v. Kaufman,
    250 A.D.2d 528, 673 N.Y.S.2d 129 (1st Dep't 1998) ...............................25

Novartis Corp. v. F.T.C.,
    223 F.3d 783 (D.C. Cir. 2000)...................................................................13

Osage Homestead, Inc. v. Sutphin,
    657 S.W.2d 346 (Mo. Ct. App. 1983) .......................................................20

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
    85 N.Y.2d 20 (1995)............................................................................passim

Pelman ex rel. Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005) .................................................................3, 14

People v. Lipsitz,
    174 Misc. 2d 571 (N.Y. Sup. Ct. 1997).....................................................11

People v. Wilco Energy Corp.,
    284 A.D.2d 469 (2d Dep't 2001)..........................................................10, 11

Perlman v. McDonald's Corp.,
    237 F.Supp.2d 512 (S.D.N.Y. 2003) .........................................................14

Polonetsky v. Better Homes Depot, Inc.,
    185 Misc. 2d 282, 712 N.Y.S.2d 801 (N.Y. Sup. Ct. 2000).....................11

Posner v. Minnesota Min. & Mfg. Co., Inc.,
    713 F. Supp. 562 (E.D.N.Y. 1989) ...........................................................19

Riordan v. Nationwide Mut. Fire Ins. Co.,
    756 F. Supp. 732 (S.D.N.Y. 1990) .............................................................9

# TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                   **Page**

Sichel v. UNUM Provident Corp.,
    230 F. Supp. 2d 325 (S.D.N.Y. 2002) ...............................................................8

Sims v. First Consumers Nat. Bank,
    303 A.D.2d 288 (1st Dep't 2003) ...............................................................13

Solomon v. Bell Atl. Corp.,
    9 A.D.3d 49 (1st Dep't 2004) ...................................................................22

Spirit Locker, Inc. v. EVO Direct, LLC,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ........................................................24

Spivey v. Adaptive Mktg. LLC,
    622 F.3d 816 (7th Cir. 2010) ...................................................................23

St. John's Univ., New York v. Bolton,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ..........................................................3

State of New York v. Feldman,
    210 F. Supp. 2d 294 (S.D.N.Y. 2002) ..........................................................6

State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.,
    87 Wash. 2d 298, 553 P.2d 423 (1976) ......................................................11

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ...............................................................................2

Teller v. Bill Hayes, Ltd.,
    213 A.D.2d 141 (2d Dep't 1995)..................................................................7

Veera v. Ambac Plan Admin. Comm.,
    769 F. Supp. 2d 223 (S.D.N.Y. 2011) ..........................................................2

Verizon Directories Corp. v. Yellow Book, Inc.,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ........................................................13

Watts v. Jackson Hewitt Tax Serv. Inc.,
    579 F. Supp. 2d 334 (E.D.N.Y. 2008) ........................................................11

## <u>TABLE OF AUTHORITIES</u>
(Cont'd)

<u>Cases</u>                                                                                                  <u>Page</u>

<u>Wolens v. American Airlines, Inc.</u>,
    626 N.E.2d 205 (Ill. 1993)............................................................................21

<u>Wolf v. National Council of Young Israel</u>,
    264 A.D.2d 416 (2d Dep't 1999).................................................................23

<u>Woods v. Maytag Co.</u>,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ....................................................4, 12

<u>WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.</u>,
    No. 10-4092, 2011 WL 7416334 (S.D.N.Y. July 5, 2011)...........................6

<u>Zumbrun v. USC</u>,
    25 Cal. App. 3d 1 (Cal. Ct. App. 1972).....................................................20


<u>Statutes</u>

N.Y. G.B.L. § 349 ...............................................................................................passim

<u>Rules</u>

Fed. R. Civ. P. 8 ..........................................................................................2, 15, 19

**INTRODUCTION**

After food, water and shelter, the most vital of all consumer commodities is medicine. Particularly for senior citizens and the disabled, the cost of prescription medicines often accounts for a substantial portion of consumers' limited incomes.  To capture as much of that market as possible, Defendant Rite Aid Corporation ("Rite Aid") lures consumers into its pharmacies by offering membership in its Rx Savings Program.  Rite Aid represents that consumers who become members will "enjoy savings" by paying only $8.99 for a 30-day supply, or $15.99 for a 90-day supply, for more than 500 listed generic drugs.  Amended Class Action Complaint ("Complaint") ¶ 1.  With callous disregard for its obligations under N.Y. G.B.L. § 349 and the common law, however, Rite Aid in fact charges many Rx Savings Program members substantially more than the advertised amount by collecting more expensive insurance copayments, as a result of a uniform computer program that defaults to such higher insurance copayments rather than the Rx Savings Program price.  Complaint ¶¶ 2, 21-23.  Representing that a product will be sold at a certain price, and subsequently charging more, is a classic deceptive practice under § 349, is a breach of contract, and results in Defendant's unjust enrichment at the direct expense of New York consumers.

In improvidently moving to dismiss the Complaint, Rite Aid does little to defend the propriety of its conduct; instead, it argues that the Complaint does not adequately allege that the practice is widespread, and that Plaintiff should have detected its deceptive and wrongful overcharges.  Of course, whether the number of similarly deceived consumers is sufficiently numerous to justify class certification is a question for another day (as is the breadth of Rite Aid's uniform practice of charging copayments that are higher than the Rx Savings Program price).

Significantly, and despite the fact that much of Defendant's brief is spent arguing that Plaintiff somehow fails to allege that the challenged practice at issue is widespread or consumer-oriented, nowhere does Rite Aid step forward and aver that Plaintiff is mistaken or that Plaintiff's experience is an aberration or an exception to Rite Aid's general billing practices. The reason for that failure is obvious: collection of insurance copayments greater than the advertised Rx Savings Program prices is reaping millions of dollars in unjustified profits for Defendant. Indeed, this Court remarked during the March 2, 2012 pre-motion hearing, "why doesn't Rite Aid just refund the difference between what it said it was going to charge and what it charged and that would probably cost it a lot less than litigating the case?" The answer, it appears, is that Rite Aid's windfall is far greater than the anticipated litigation costs it is prepared to incur in its futile attempt to keep its ill-gotten gains.

## I.      Standards Under Rules 8(a) and 12(b)(6).

Under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), only a complaint that fails to contain sufficient allegations of fact to state a claim for relief that is "plausible on its face" may be dismissed. Id. at 570. In considering a motion to dismiss for failure to state a claim, the "Court accepts all material facts alleged in the complaint as true and construes all reasonable inferences in the plaintiff's favor." Veera v. Ambac Plan Admin. Comm., 769 F. Supp. 2d 223, 226 (S.D.N.Y. 2011) (denying motion to dismiss). Under Fed. R. Civ. P. 8(a)(2), then, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," a requirement that the Supreme Court has repeatedly found satisfied if the complaint provides the defendant notice of the character of the claim and the grounds on which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-15 (2002). Under the notice pleading requirements, "[s]pecific facts are not necessary; the statement need only give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551

U.S. 89, 93 (2007) (citing Twombly).[1]

## II.   Plaintiff Adequately Alleges Claims Under N.Y. General Business Law § 349.

As alleged in the Complaint, Rite Aid advertises that consumers who join its "Rx Savings

Program" will "enjoy savings" by paying the specified price of $8.99 for a 30-day supply, or

$15.99 for a 90-day supply, for more than 500 listed generic drugs.  Complaint ¶ 1.  But Rite Aid

fails to disclose that its pharmacy computers are programmed with a default that charges

consumers with insurance the applicable insurance copayment, which is often higher than the Rx

Savings Program price.  Complaint ¶¶ 21-22.  As a result, and in direct contravention of its

advertised representations, Rite Aid frequently charges consumers a price higher than the Rx

Savings Program price.  Complaint ¶ 23.  These allegations are more than sufficient to plead

deceptiveness under § 349.

In its defense, Rite Aid argues: (1) that its practice of charging consumers more than the

publicly-advertised Rx Savings Program price is not consumer-oriented (notwithstanding the fact

that the Complaint pleads that Rite Aid's computer system is programmed uniformly to charge

consumers an often-higher insurance copayment); (2) that the practice of charging more than the

advertised price is not deceptive (notwithstanding the well-settled rule to the contrary); and (3)

that Mr. Auerbach should have been able to detect Defendant's overcharges (in other words, that

consumers are at fault for not detecting Defendant's deceptive practices).  None of these

arguments withstand scrutiny.

---

[1] Complaints for violation of § 349, breach of contract and unjust enrichment are subject to the notice pleading standards of Fed. R. Civ. P. 8(a)(2).  See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (§ 349 claim "need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (breach of contract claim subject to Rule 8); St. John's Univ., New York v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("[D]ismissal of plaintiff's alternative theory of unjust enrichment on motion to dismiss would violate the liberal policy of Rule 8.") (citation omitted).

**A.    Standards On A Motion To Dismiss**
**A N.Y. General Business Law § 349 Claim.**

"To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1)

defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material

way, and (3) the plaintiff has been injured as a result." Woods v. Maytag Co., 807 F. Supp. 2d

112, 128 (E.D.N.Y. 2011) (citations and quotations omitted). The law is intentionally broad and

applies to virtually all economic activity. Goshen v. Mutual Life Insurance Company of New

York, 98 N.Y.2d 314, 324 (2002). § 349 "seeks to secure an honest market place" by

"provid[ing] consumers with a means of redress for injuries caused by unlawfully deceptive acts

and practices." Id. at 323.

**B.    Plaintiff Adequately Pleads That Defendant's**
**Deceptive Practices Are Consumer-Oriented.**

In arguing that the Complaint fails to adequately plead that Defendant's practice falls

within the gambit of § 349, Defendant misapprehends the law concerning what constitutes

consumer-oriented conduct. The issue is not whether Plaintiff has alleged that the practice

affects numerous consumers; instead, the question is whether the act or practice in question has

the potential to affect consumers at large, rather than being strictly a private contract dispute.

Plaintiff not only alleges that the conduct in question is consumer-oriented (because it involved

the sale of consumer products at a retail pharmacy pursuant to publicly-disseminated

advertisements), but the Complaint alleges with specificity the manner in which the deceptive

practice occurs and why it affects consumers at large (namely, by means of a computer program

that defaults to the often-higher insurance copayment). Complaint ¶¶ 2, 21-23.

The test is straightforward: "A claim brought under this statute must be predicated on an

act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the

public at large, as distinguished from merely a private contractual dispute." Elacqua v.
Physicians' Reciprocal Insurers, 52 A.D.3d 886, 888 (3d Dep't 2008) (reversing dismissal of §
349 claim) (citations omitted; emphasis added).  The question, then, is whether it is a consumer
claim or a private contract dispute:  "A claim brought under this statute must be predicated on an
act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the
public at large, as distinguished from merely a private contractual dispute." Id.  See also Allstate
Ins. Co. v. Lyons, No. 11–2190, 2012 WL 517600, at *11 (E.D.N.Y. 2012) (denying motion to
dismiss § 349 claim and holding that "[a] plaintiff establishes consumer-oriented conduct by
showing that 'the acts or practices have a broader impact on consumers at large' in that they are
'directed to consumers' or that they 'potentially affect similarly situated consumers.'") (citation
omitted).

> As the Court of Appeals explained:

> Consumer-oriented conduct does not require a repetition or pattern of deceptive
> behavior. The statute itself does not require recurring conduct. Moreover, the
> legislative history makes plain that this law was intended to "afford a practical
> means of halting consumer frauds at their incipiency without the necessity to wait
> for the development of persistent frauds".  Plaintiff, thus, need not show that the
> defendant committed the complained-of acts repeatedly -- either to the same
> plaintiff or to other consumers -- but instead must demonstrate that the acts or
> practices have a broader impact on consumers at large.  Private contract disputes,
> unique to the parties, for example, would not fall within the ambit of the statute.

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25
(1995) (citations omitted).

Defendant argues that the facts of the Complaint relate only to Plaintiff's experience at
Rite Aid.  Def. Mem. at 8-10.  "This argument, however, misapprehends what the consumer-
oriented element requires." M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 221
(E.D.N.Y. 2010) ("Consumer-oriented conduct does not require a repetition or pattern of

deceptive behavior.  [§ 349] itself does not require recurring conduct.") (quoting Oswego

Laborers').  In fact, "there is no 'magic number' of consumers who must be deceived before

conduct can become "consumer oriented." Id.[2]

In fact, nothing could be a more typical consumer transaction than that alleged by Mr.

Auerbach, having been lured into the retail chain pharmacy Rite Aid by publicly-disseminated

advertising.  See WorldHomeCenter.com, Inc. v. PLC Lighting, Inc., No. 10-4092, 2011 WL

7416334 (S.D.N.Y. July 5, 2011) ("[B]ecause the 'consumer-oriented' requirement is to be

liberally construed, the Court finds that the alleged communication directly to consumers is

enough to establish 'consumer-oriented' conduct at this stage of the litigation.") (denying in part

motion to dismiss; citing State of New York v. Feldman, 210 F. Supp. 2d 294, 301-02 (S.D.N.Y.

2002)).  Moreover, Defendant's practice of having a computer program that defaults to insurance

copayments rather than lower Rx Savings Program prices is consumer-oriented, as the only

purpose of the program is to execute a consumer sale of prescription drugs.  See Gaidon v.

Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344 (1999) ("In contrast to a private contract

dispute as to policy coverage, the practices before us involved an extensive marketing scheme

that had 'a broader impact on consumers at large.'") (citations omitted).

---

[2]  Defendant suggests, without citation to any authority, that, because its failure to honor its promise to charge
consumers the Rx Savings Program price rather than a higher copayment may affect consumers differently, it cannot
be a consumer-oriented practice. Def. Mem. at 9.  However, the Complaint alleges that there are numerous
consumers that are likewise charged prices higher than the Rx Savings Program, Complaint ¶ 1, an allegation that is
more than plausible given the uniformity of Rite Aid's marketing with respect to the Rx Savings Program, and the
use of a uniform computer program default.  Moreover, Defendant's contention that some consumers would prefer
to pay higher prices is not only an unfounded factual contention that is not germane to this motion to dismiss, but it
is belied by common sense.  And, contrary to Defendant's argument, Def. Mem. at 9, any consumers that
inexplicably might want to pay higher copayments so that their insurance companies can track their prescription
purchases would not join the Rx Savings program in the first instance.  Similarly, this Court need not concern itself
with the claim that some consumers benefit from the default because their copayments are lower, as those customers
are not members of the proposed class (which is comprised only of consumers who paid a price higher than the Rx
Savings program price).

M & T Mortg. Corp. v. White is particularly instructive. There, home purchasers alleged deception in the purchase of homes. Notwithstanding the fact that the allegations only concerned two home purchasers, the court rejected the claim that the transactions were not consumer-oriented, reasoning that they were capable of repetition affecting other consumers:

> The transactions herein were not unique to the parties, nor were they private in nature or a single shot transaction. On the contrary, such practice could easily recur and could potentially impact similarly situated consumers and therefore be considered consumer-oriented and harmful to the public at large. While the deceptive practices were aimed at particular individuals in these instances, nothing suggests that similarly vulnerable consumers could not-and did not-fall victim to similar practices, and there is nothing especially unique or unusual about these particular transactions.

M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 571 (E.D.N.Y. 2010) (citing Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 146 (2d Dep't 1995) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.") (other citations omitted).

Erdman v. HSBC Auto Finance is also instructive. There, a consumer alleged he was wrongfully induced to settle a debt, ruining his credit record and forcing him into sub-prime loans. The court there rejected the claim that this was not consumer-oriented, despite the fact that the complained-of acts only concerned the plaintiff. Crucial in the court's analysis was the fact that this practice had the potential of affecting other consumers: "HSBC argues that GBL § 349 does not apply because the conduct involved a single private transaction and is therefore not 'consumer-oriented.' However, such a practice, if factual, could potentially affect similarly situated customers and should therefore not be dismissed on these grounds." Erdman v. HSBC

Auto Fin., No. 09-125, 2011 WL 3420849, at *4 (W.D.N.Y. Aug. 4, 2011) (denying motion to dismiss § 349 claim).[3]

Cases cited by Defendant do not support the claim that its conduct is not consumer-oriented. In MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582 (E.D.N.Y. 1997), the plaintiff alleged that his disability insurer wrongfully attempted to influence his doctor to change his prognosis. With no supporting factual allegations, the plaintiff alleged this was consumer-oriented because it was part of a national policy. Id. at 586. Not surprisingly, the court found no factual support for the plaintiff's claim that his dispute was anything more than an individual dispute. Id. In contrast here, Plaintiff has alleged that his injury stemmed from Rite Aid's use of a computer program that ensures that consumers with insurance will be charged a copayment, rather than the Rx Savings Program price, which is often higher.

Moreover, courts following MaGee limit it and similar cases to the processing of individual insurance claims, which are simply private disputes, as distinguished from claims stemming from marketing campaigns, which are inherently public in nature. As the court in Sichel v. UNUM Provident Corp., 230 F. Supp. 2d 325 (S.D.N.Y. 2002) held:

> In MaGee, the court dismissed a section 349 action very similar to this one for alleging only a "garden variety breach of contract action" instead of a "national policy". . . Gaidon, on the other hand, concerned a "marketing scheme" to convince prospective customers to buy their "vanishing date" insurance policies through deceptive sales presentations. As a result of these allegations, the Court of Appeals reversed the trial court's dismissal of the section 349 claim.

Id. at 330 (citations omitted).[4]

_____

[3] See also Ng v. HSBC Mortg. Corp., No. 07-5434, 2010 WL 889256, at *15 (E.D.N.Y. Mar. 10, 2010) ("On the contrary, if the allegations are true, such practice could easily recur and could 'potentially impact similarly situated consumers' and therefore be considered consumer-oriented and harmful to the public at large. While the deceptive practices were aimed at Ng in this particular instance, nothing suggests that similarly vulnerable consumers could not fall victim to similar practices, and there is nothing especially unique or unusual about this particular transaction.") (citation omitted).

[4] Abraham v. Penn Mut. Life Ins. Co., No. 98-6439, 2000 WL 1051848, at *3 (S.D.N.Y. July 31, 2000) is the same, as there the court denied the § 349 claim because "plaintiff has alleged only that Penn Mutual breached its

So long as the Complaint alleges a plausible basis for the claim that consumers other than Mr. Auerbach were affected, the motion to dismiss must be denied.  See Riordan v. Nationwide Mut. Fire Ins. Co., 756 F. Supp. 732 (S.D.N.Y. 1990):

> [P]laintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. Plaintiffs allege a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the Policy and therefore set forth precisely such evidentiary allegations of injury to the public at large as are required to sustain their claim under the General Business Law.  The public injury inherent in such a scheme, if proven, is unquestionable since the alleged deceptive practices go to the very essence of the services Nationwide provides to the public on a grand scale, as well as its obligation to deal with the public in good faith.

Id. at 739 (citation omitted).  Plaintiff's Complaint alleges that Rite Aid has caused tens of thousands of New York consumers to pay considerably more than the Rx Savings Program price for their generic prescription drugs by programming its computer with a default setting that charges insured customers an often higher insurance copayment.  These allegations are more than sufficient to plead consumer-oriented conduct under § 349.

## C.      Plaintiff Adequately Pleads That Defendant's Practices Are Deceptive.

Plaintiff's claim that Rite Aid's practice is deceptive is simple.  In order to lure consumers into its New York retail pharmacies, Rite Aid markets the Rx Savings Program as a means by which consumers can save money by purchasing a specific list of generic drugs for a fixed $8.99 (or, for a 90-day supply, $15.99) price.  For Mr. Auerbach and members of the proposed class, that is a misrepresentation because Rite Aid in fact often charges a higher insurance copayment to insured Rx Savings Program members.  Moreover, Rite Aid fails to

---

obligations to her; she has not alleged that anyone other than she has suffered injury or potential injury as a result of defendant's conduct . . . An insurance company's actions in settling a claim, however, are not inherently consumer-oriented." (citations and quotations omitted).  Harary v. Allstate Ins. Co., 983 F. Supp. 95, 99 (E.D.N.Y. 1997), another case involving an individual's claim that an insurer improperly denied coverage, is likewise inapt.

disclose to consumers that its computer system is programmed with a default setting that charges insured Rx Savings Program members an often higher insurance copayment. Failing to charge the price advertised is a classic deceptive practice under New York law, and therefore Defendant's motion to dismiss should be denied.

Under § 349, a practice is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego, 85 N.Y.2d at 26. The deceptiveness of a defendant's representations and omissions must be determined in the context in which they are made and in relation to other statements. See Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (denying motion to dismiss § 349 claim).

Under New York law, it is well settled that charging a price that is higher than that advertised is deceptive. For example, in Dank v. Sears Holding Mgmt. Corp., 59 A.D.3d 582, 583 (2d Dep't 2009), the Appellate Division, Second Department, denied a motion to dismiss a proposed class action under § 349 where the plaintiff alleged the defendant failed to honor a price matching guarantee.[5] Similarly, the court in F.T.C. v. Amy Travel Serv., Inc., 875 F.2d 564, 569 (7th Cir. 1989)[6] held that selling a service at a price higher than the stated price is deceptive.

People v. Wilco Energy Corp. is particularly instructive. There, a supplier of heating oil advertised a two-year fixed rate contract, only to subsequently charge a higher price than was advertised. Notwithstanding the fact that there was no indication that the defendant did not

---

[5] C.f., Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp., 120 Misc. 2d 848, 852, 467 N.Y.S.2d 471, 474 (App. Term 1983) (advertised discount was held to be deceptive when it was not honored by the defendant).

[6] Precedent established under the Federal Trade Commission Act is persuasive authority when determining deceptiveness under section 349. See Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) ("Section 349(h) is substantially modeled on the Federal Trade Commission Act. Hence, in interpreting the phrase 'deceptive practices,' the New York courts have in large measure relied on the Federal Trade Commission Act's definition of such practices.").

intend to honor the advertised price when made, and that the defendant reversed course and
charged the advertised price after customers complained, the court held that charging more than
the advertised price was deceptive:

> Wilco's conduct constituted a deceptive practice.  It offered a fixed-price contract
> and then refused to comply with its most material term-an agreed-upon price for
> heating oil. The fact that Wilco reinstated the fixed prices and credited its
> customers' accounts after complaints were made and an investigation commenced
> does not mean that Wilco did not act unlawfully. Further, intent to defraud is not a
> requirement for liability under the statute.  Consequently, the fact that Wilco may
> not have entered into the contracts with an intent to defraud is not determinative.

People v. Wilco Energy Corp., 284 A.D.2d 469, 471 (2d Dep't 2001) (reversing dismissal;
citations omitted).  See also Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 348-49
(E.D.N.Y. 2008) (finding hidden fee multiplier to be deceptive because it caused price to be
higher than advertised); State v. Ralph Williams' N. W. Chrysler Plymouth, Inc., 87 Wash. 2d
298, 317, 553 P.2d 423, 436 (1976) ("Respondent established price misrepresentations by
presenting evidence which proved that appellants' prices were higher than their advertised prices
and higher than their competitors' prices.").[7]  Moreover, "[a] business practice of failing to
deliver as promised is recognized as fraudulent and illegal conduct violating General Business
Law § 349." People v. Lipsitz, 174 Misc. 2d 571, 582 (N.Y. Sup. Ct. 1997).

Rite Aid's marketing relating to the Rx Savings Program's pricing creates the reasonable
impression that Plaintiff and similarly situated reasonable consumers will be charged $8.99 or
$15.99 to fill their prescriptions at Rite Aid, instead of the often more expensive copayment
mandated by their insurance carriers.  There is nothing in the advertisements that would alert a
reasonable consumer to the fact that Rite Aid might charge a higher copayment, or that the Rx

---

[7] See also Banks v. Consumer Home Mortg., Inc., No. 01-8508, 2003 WL 21251584, at *10 (E.D.N.Y. Mar. 28,
2003) (misrepresentations regarding fair market value are deceptive); Polonetsky v. Better Homes Depot, Inc., 185
Misc. 2d 282, 290, 712 N.Y.S.2d 801, 806 (N.Y. Sup. Ct. 2000) ("[T]he complaints allege deceptive practices in
connection with the sale of such services.  These include false advertising or misrepresentations that the homes were
sold 'at below market rates.'") (citing Guggenheimer v. Ginzburg, 43 N.Y.2d 268 (1977)).

Savings Program price would not always be applied.  To the contrary, Rite Aid's marketing

plainly informs consumers that membership allows them to purchase any of the 500 listed

generic drugs at the specified prices.  Complaint ¶¶ 1, 15-16; Exhibits 1 and 2.  Any reasonable

consumer would understand that Rite Aid would consistently charge this amount rather than

more expensive copayments, and Defendant's unsupported and counterintuitive claims to the

contrary should be rejected.

        More importantly, this Court need not credit Defendant's argument that it was under no

obligation to inform consumers that it would charge a higher insurance copayment because Rite

Aid affirmatively misrepresented the prices it would charge.  See In re Static Random Access

Memory (SRAM) Antitrust Litig., No. 07-01819, 2008 WL 2610549, at *2 (N.D. Cal. June 27,

2008) (denying motion to dismiss § 349 claim where the plaintiffs alleged that the "Defendants

provided information that they knew would be seen by IP Plaintiffs and failed to provide other

material information necessary to prevent the provided information from being misleading.").

        Furthermore, it is well settled that "[w]hen a defendant exclusively possesses information

that a reasonable consumer would want to know and could not discover without difficulty,

failure to disclose can constitute a deceptive or misleading practice."  Jackson Hewitt, 579 F.

Supp. 2d at 347 (citing to Oswego Laborers', 85 N.Y.2d at 26).  See also Maytag Co., 807 F.

Supp. 2d at 129 (denying motion to dismiss and holding that "when a defendant exclusively

possesses information that a reasonable consumer would want to know and could not discover

without difficulty, failure to disclose can constitute a deceptive or misleading practice.").  Only

Rite Aid knows that its computer is programmed with a default that often denies members the

advertised Rx Savings Program price.

Moreover, the Complaint alleges that the injury is monetary, a direct result of Rite Aid charging prices higher than those advertised.  While individual consumers may differ in their particular needs, one interest remains constant: the desire to pay less rather than more, and the expectation that Rite Aid would honor its promises.  Indeed, price is material as a matter of law. See Novartis Corp. v. F.T.C., 223 F.3d 783, 786 (D.C. Cir. 2000) ("Under the Commission's test, a material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  The Commission has historically *presumed* materiality for . . . a claim that concerns the purpose, safety, efficacy, or cost of the product or service.") (citations and quotations omitted; emphasis in original).[8]

Finally, whether or not Defendant's practices are deceptive is a question of fact that is not properly resolved on this motion.  See Sims v. First Consumers Nat. Bank, 303 A.D.2d 288, 289 (1st Dep't 2003).  As Senior District Judge Weinstein held:

> A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare [whether reasonable consumers are deceived] . . . Analytical transparency begins with an accurate assessment of the facts-here what the defendant-communicator intended to communicate and what was communicated to the intended communicant, not what a communication means to a judge. In the present case the court is not prepared to say how users and advertisers would be affected by these commercials.

Verizon Directories Corp. v. Yellow Book, Inc., 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004). Therefore, Defendant's motion should be denied.

## D.     Plaintiff Adequately Pleads That Defendant's Deception Caused Him Injury.

Defendant complains that Plaintiff has not identified the specific advertisement or representation that led him to believe that members of the Rx Savings Program would receive the

---

[8]  See also Galvan v. KDI Distribution Inc., No. 08-0999, 2011 WL 5116585, at *10 (C.D. Cal. Oct. 25, 2011) ("[R]epresentations regarding price are material to a purchase"); F.T.C. v. Windward Mktg., Inc., No. 96-615F, 1997 WL 33642380, at *10 (N.D. Ga. Sept. 30, 1997) ("[A]ny representations concerning the price of a product or service are presumptively material.").

Rx Savings Program price, and therefore he has not pled any act of Defendant's that caused him harm. Def. Mem. at 11. However, the only reason any insured consumer would join the Rx Savings Program is to pay the Rx Savings Program price rather than a higher copayment. Complaint ¶ 1, 12. In fact, that is precisely what the Complaint alleges with respect to Plaintiff, namely that "Mr. Auerbach joined the Rx Savings Program solely for the purpose of obtaining the promised prices. Had Mr. Auerbach known that Rite Aid would not honor that price, he would have had his prescriptions filled elsewhere." Complaint ¶ 30.[9]

Moreover, the Complaint specifies precisely what Rite Aid represents to consumers by means of direct quotations from its uniform marketing materials, namely that membership in the program entitles consumers to specified prices for generic drugs. Complaint ¶ 12; Exhibits 1 and 2. Thus, the Complaint "point[s] to the specific statements that form the basis" of Plaintiff's claims. Perlman v. McDonald's Corp., 237 F.Supp.2d 512, 527 (S.D.N.Y. 2003). It is well settled that a GBL § 349 claim need not be pled under Rule 9(b). Pelman, 396 F.3d at 511. Instead, under Rule 8(a), it is sufficient to put Defendant on notice of the nature of Plaintiff's claim. Id. (citations omitted). This, the Complaint does readily.

**E.      Plaintiff Need Not Allege Or Prove That He Was Subjectively Deceived.**

Cherry-picking one set of transactions on January 23, 2010 from amongst hundreds over a near-seven year period, Defendant argues that Plaintiff could not have been deceived because he once purchased a drug included in the Rx Savings Program by paying an insurance copayment that was lower than the Rx Savings Program price. Def. Mem. at 12-13. There are three reasons Mr. Auerbach's prior purchases are of no moment on this motion.

---

[9]  Defendant, in essence, argues that Plaintiff fails to allege that he made his purchases at Rite Aid in reliance on its representations and omission regarding the Rx Savings Program. Of course, it is beyond peradventure that a plaintiff need not plead or prove reliance to recover under section 349. See Pelman, 396 F.3d at 511 ("[A] private action brought under § 349 does not require proof of actual reliance.").

First, this Court should not consider Defendant's proffered, but unauthenticated, prescription history. It is well settled that matters not contained in the complaint should not be considered on a motion to dismiss, unless they are incorporated by reference. Facts or documents not pled are only incorporated by reference "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). Here, Plaintiff nowhere references or incorporates his entire prescription transaction history, or even the January 23, 2010 transactions to which Defendant refers. To the contrary, the only transactions referenced or pled in the complaint are in September, 2010 and February, 2011. Dates on which Mr. Auerbach was not deceptively overcharged are not, by definition, integral to his claims.

Indeed, the Second Circuit cautions against allowing the consideration of extrinsic materials because it is contrary to the liberal pleading requirements under Rule 8(a), risks adjudication on an incomplete record, and is unfair to the plaintiff owing to a lack of notice:

> Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) . . . when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record.

Chambers v. Time Warner, Inc., 282 F.3d 147, 154-55 (2d Cir. 2002).

It is not enough that the information outside the Complaint is relevant or even known to the plaintiff; instead, a court may only consider such information "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers, 282 F.3d at 153. Thus, a "plaintiff's *reliance* on the terms and effect of a document

in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Id. (emphasis in original).[10]

Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc. is instructive. There, the defendant attempted to introduce a transcript of a conference call at which certain relevant statements were made. The court declined to consider the transcript, reasoning that the conference call in question occurred before the period of time the complaint alleged the misrepresentations occurred:

> With those principles in mind, the Court respectfully declines to consider the October 23, 2007 earnings call transcript . . . Plaintiffs' claims do not appear to be based—either in whole or in part—on the October 23, 2007 transcript . . . Plaintiffs point out that the complaint, at ¶ 42, alleges that Defendants first began promising 8% to 12% growth in 2008 "[a]s early as mid–2007"—months before the conference call at issue.

Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc., No. 09-5641, 2011 WL 1303387, at *16 (N.D. Ill. Mar. 31, 2011). Similarly, the January, 2010 transactions to which Defendant refers occurred nine months before the transactions Plaintiff alleges were deceptive.

Defendant relies on Eaves v. Designs for Fin., Inc. for the proposition that Plaintiff's unauthenticated prescription transaction history may be considered on this motion to dismiss. However, the Eaves court declined to consider documents that, while plainly relevant to the defendant's liability, were not relied upon in drafting the complaint:

> While Designs would certainly prefer the Court to consider the document—it contains liability waivers and representations regarding risk and reliance that Designs argues bar some of Plaintiffs' claims—nothing in the document or Second Amended Complaint suggests that Plaintiffs relied on the terms or effect

---

[10] Thus, courts reject defendants' attempts to introduce business records not attached to the complaint. See In re Ahmadi, 467 B.R. 782 (Bankr. M.D. Pa. 2012) ("The Defendant, in its Motion to Dismiss, supports its claims with . . . various business records of the Defendant . . . the documents attached by the Defendant fail to meet any of the exceptions to the general rule prohibiting a court from considering matters outside the pleadings. Therefore, I will not consider them in measuring the sufficiency of the Amended Complaint.").

of the document in drafting their Second Amended Complaint.  Such a document
is more properly considered on summary judgment.

> Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 245-46 (S.D.N.Y. 2011) (citation

omitted).

In addition, the fact that the transaction record is not authenticated as a business record

precludes this Court from considering it.  See In re Enron Corp. Sec., Derivative & "Erisa" Litig.,

MDL No. 1446, 2003 WL 23316646 (S.D. Tex. Mar. 27, 2003) (citation omitted).[11]

Second, Mr. Auerbach's subjective experiences are of no moment.  Under § 349, whether

a practice is deceptive turns on whether a reasonable consumer would be mislead.  See Oswego

Laborers', 85 N.Y.2d at 26 (adopting "an objective definition of deceptive acts and practices,

whether representations or omissions, limited to those likely to mislead a reasonable consumer

acting reasonably under the circumstances.").  As the Fifth Circuit explained, applying a

subjective test to determine deceptiveness, rather than that of the hypothetical reasonable

consumer, obviates the remedial purpose of consumer protections statutes:

> [T]o apply a subjective standard to the test for materiality would misperceive the
> remedial purpose of the Act.  To apply a subjective standard would be to protect
> only the sophisticated credit shopper; such a standard would fail to protect the
> unsophisticated or uneducated consumer . . . We apply, instead, an objective
> standard to determine the materiality question . . .

Bustamante v. First Fed. Sav. & Loan Ass'n of San Antonio, 619 F.2d 360, 364 (5th Cir. 1980).

Therefore, whether or not Mr. Auerbach should have been forewarned that Rite Aid would

deceive him merely because he experienced transaction that was not deceptive nine months

earlier is wholly irrelevant to the question of whether a reasonable person in like circumstances

---

[11] See also First United Bank & Trust v. PNC Fin. Services Group, Inc., 667 F. Supp. 2d 443, 460 (M.D. Pa. 2009) ("[A] court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  PNC never directly addresses whether the Court can properly consider its exhibit contradicting the complaint on a motion to dismiss, and, after considering the authorities, the Court finds that considering PNC's certificate would be improper.") (citation omitted).

(that is, a Rx Savings Program member with insurance who is charged a higher copayment) would be deceived.

Third, the fact that Defendant did not overcharge Plaintiff on January 23, 2010 does not mean he was not deceived in September, 2010, February, 2011, or on other dates. Defendant argues that, because Mr. Auerbach paid for one of his prescriptions with a copayment that was lower than the Rx Savings Program price, he must have known that Rite Aid would not honor its price promise. Def. Mem. at 12-13. Such an argument is implausible to say the least; merely because Plaintiff was charged a lower premium at one time does not mean that it was unreasonable or implausible for him to have expected that Defendant would charge the Rx Savings Program price it advertised when it was lower than his then-applicable copayment. Moreover, there is nothing before the Court on this motion that explains why Mr. Auerbach was charged those amounts, demonstrating the wisdom of not considering selected extraneous materials on a motion to dismiss. And of course, Defendant's argument here is a red herring; consumers whose insurance copayments are lower than the Rx Savings Program price will not be part of the class (which will only be comprised of insured members who paid a copayment higher than the Rx Savings Program price).

### III.   The Complaint More Than Sufficiently Pleads A Contract Between Plaintiff and Rite Aid.

In order to state a valid claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) that it performed under the contract, (3) that the defendant breached the contract by failing to perform according to its terms, and (4) that plaintiff suffered damages as a result of defendant's breach. Morris v. 702 E. Fifth St. HDFC, 46 A.D.3d 478, 479 (1st Dep't 2007). Here, the Complaint readily satisfies this pleading standard.

A.      **Plaintiff Adequately Pleads A Contract Existed Between The Parties.**

Plaintiff alleges that the parties entered into a definite contract (Rite Aid agreed to sell Plaintiff generic drugs at a specified price, and Plaintiff provided consideration for that agreement in the form of his shopping at Rite Aid and providing Defendant with his personal identifying information); Plaintiff performed by shopping at Rite Aid, providing his personal information, and by purchasing generic drugs; Defendant breached that contract by charging more than the agreed-upon price; and Plaintiff was damaged in the amount of the overcharge. Complaint ¶¶ 27-30.  Such allegations are more than adequate.  See Posner v. Minnesota Min. & Mfg. Co., Inc., 713 F. Supp. 562, 563 (E.D.N.Y. 1989) ("It is not necessary for each factor to be pleaded individually so long as plaintiff has submitted 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2).").

While Defendant is generally correct that an advertisement is not an offer, there is an exception to that rule, where the advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation." Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 124 (S.D.N.Y. 1999) (citation omitted).  See also Lefkowitz v. Great Minneapolis Surplus Store, 251 Minn. 188, 86 N.W.2d 689, 691 (1957).[12]

In Lefkowitz, the defendant had published a newspaper announcement stating: "Saturday 9 AM Sharp, 3 Brand New Fur Coats, Worth to $100.00, First Come First Served $1 Each." Id. at 690.  Mr. Lefkowitz arrived at the store, dollar in hand, but was informed that under the defendant's "house rules," the offer was open to ladies, but not gentlemen.  Id.  The court ruled

---

[12] That the Pepsico court found there was no contract, 88 F.Supp.2d at 119, is hardly surprising and does not require the same result here.  There, the plaintiff sought to compel Pepsi to provide a Harrier Jet for 7,000,000 Pepsi points (merchandise not included in any catalog) based on a television ad that was "clearly a joke" Id. at 120.

that because the plaintiff had fulfilled all of the terms of the advertisement and the advertisement was specific and left nothing open for negotiation, a contract had been formed.  Id.[13]

Similarly, in Brazil v. Dell Inc., N. 07-01700, 2008 WL 4912050, at *5-6 (N.D. Cal. Nov. 14, 2008), the court held that allegations that a company breached agreements to provide advertised discounts of purchased products stated a claim for breach of contract.  In rejecting Dell's argument that marketing materials were not part of any agreement between the parties, the court held that "determination of whether the statements on the website and in the sale confirmation are part of the parties' agreement is inappropriate for a motion to dismiss."  Id.[14]

Plaintiff alleges that Rite Aid advertises that customers joining a specific program (the Rx Savings Program) will pay only specific prices for specific drugs at a specific place.  Nothing is left to negotiation, and therefore Rite Aid's advertisement plainly constitutes an offer which Plaintiff and class members accepted when they signed up for the program and shopped at Rite Aid for their generic drugs.[15]

Moreover, acceptance of an offer is made and a contract is formed, where, as here, a party assents to the terms of the offer made "by the offeree in a manner invited or required by the offer."  Restatement (Second) of Contract § 50 (1981).  Thus, loyalty programs such as the Rx

---

[13] See also Johnson v. Capital City Ford Co., 85 So.2d 75, 79 (La. Ct. App. 1955) (finding that newspaper advertisement was sufficiently certain and definite to constitute an offer).

[14] See also Zumbrun v. USC, 25 Cal. App. 3d 1, 10 (Cal. Ct. App. 1972) ("[C]atalogs, bulletins, circulars, and regulations" formed part of the contract between students and the university); Osage Homestead, Inc. v. Sutphin, 657 S.W.2d 346, 351-352 (Mo. Ct. App. 1983) ("An advertisement for the sale of goods at a certain price may or may not constitute an offer the acceptance of which will consummate a contract.  Whether it does depends upon the particular facts and circumstances in each case, the most important factor being the intent of the advertiser.  Other factors to be considered in deciding the question are the definiteness or certainty of the wording of the advertisement."); Chang v. First Colonial Sav. Bank, 410 S.E.2d 928, 930-31 (Va. 1991) (same); Lim v. The.tv Corporation International, 99 Cal. App. 4th 684, 690 (2002) ("[A]n advertisement can constitute an offer, depending on how it is phrased and perhaps on other circumstances.")

[15] Defendant argues that the Rx Savings Program terms are not definite because it reserves the right to change them. Def. Mem. at 17.  However, such changes would only have prospective effect; it would not change the contract currently in place, and Defendant does not assert that Rite Aid has changed any of the terms.

Savings Program are binding contracts when the participants in the programs do business with the company offering the incentive.  For example, in <u>Wolens v. American Airlines, Inc.</u>, 626 N.E.2d 205 (Ill. 1993), the Illinois Supreme Court found that retroactive changes to a frequent flyer program constituted a breach of contract: "[B]y flying on American or by doing business with American affiliates, a contractual relationship is formed which vests the frequent flyer with the right to earn specific travel awards."  <u>Id.</u> at 208.  Similarly in <u>Frequent Flyer Depot, Inc. v. American Airlines, Inc.</u>, 281 S.W.3d 215, 225 (Tex. App. 2009), the court described the airline's argument, that providing reward points in exchange for purchasing paid air travel on the airline and its partner airlines did not create a contract, as "nonsensical."[16]

The frequent flyer program cases are analogous to the Rx Saving Program.  Both programs offered incentives to encourage greater use of the company's services or products; both required participants to affirmatively enroll in the program; in both programs the consumer receives incentives through purchasing the company's products or services, and the specific incentive available and the procedures to be followed can be found in material distributed by the company.  Thus, in both instances, a contract is formed upon the exchange of consideration; here, upon the purchase of generic drugs and there upon the purchase of an airplane ticket.

## B.    The Voluntary Payment Doctrine Does Not Bar Plaintiff's Contract Claim.

Defendant places great emphasis on its argument that Mr. Auerbach voluntarily paid Rite Aid's overcharges.  However, the voluntary payment doctrine is inapplicable where, as here, the plaintiff pays an overcharge based on a mistake of fact:

> [T]here is a long-established principle that money paid under a mistake of fact may be recovered, unless the party resisting repayment can demonstrate that its position has so changed by reason of the payment as to make repayment

---

[16]  While both <u>Wolens</u> and <u>Frequent Flyer</u> presented an issue of whether the contracts were preempted by federal law, necessary to the holdings that the contracts were not preempted was each court's determination that there was a contract.

> inequitable.  The voluntary payment doctrine which bars recovery of payments
> voluntarily made with full knowledge of the facts and in the absence of mistake of
> material fact or law [citations omitted], does not apply here, where the
> overpayments were clearly made to defendants based on a mistake of fact,
> namely, the amount of fees actually owed by plaintiff to defendant.

McInerney & Squire LLP v. Hall Charne Bruce & Olson, S.C., 15 A.D.3d 233, 233 (1st Dep't

2005).  See also Fashion Bug No. 2100 Of Batavia, Inc v. 425 West Main Associates LP. 10

Misc.3d 1053A, 806 N.Y.S.2d 449 (4th Dep't 2006) (finding that where lease provided for a rent

abatement, credit for which the tenant forgot to take, the landlord's argument "drawn from the

voluntary payment doctrine" did not apply because "such payments made under a mistake of fact

are not covered by the voluntary payment doctrine, even if the ignorance of true facts was caused

by negligence or inadvertence.").

At no time did Plaintiff ever voluntarily make payment to Rite Aid "with full knowledge

of the facts."  Rather, in paying the overcharges, Mr. Auerbach was under the mistaken

impression that the amount Rite Aid charged him was the proper price.  Thus, Mr. Auerbach was

operating on a mistake of fact, namely, "the amount of fees actually owed by plaintiff to

defendants."  Kirby McInerney & Squire, 15 A.D.3d at 233.  Moreover, Rite Aid takes it upon

itself to inform customers what price it will charge, whether that is based on the Rx Savings

Program price or a higher insurance copayment.  Complaint ¶¶ 10-11.

Cases cited by Defendant are inapposite because they involve mistakes, not of what the

proper price was, but of what service or product they were purchasing.  For example, in Solomon

v. Bell Atl. Corp., 9 A.D.3d 49, 55 (1st Dep't 2004), the issue was not whether the consumer

knew that the price was higher than was represented; instead, the claim was that internet speeds

were slower than advertised, and the court concluded that anyone who paid fees after learning

that the speed was lower than advertised could not recover.[17]

## IV.    Plaintiff Adequately Alleges A Claim For Unjust Enrichment.[18]

The essence of unjust enrichment is that one party has received money or a benefit at the

expense of another.  Wolf v. National Council of Young Israel, 264 A.D.2d 416 (2d Dep't 1999).

To prevail on a claim of unjust enrichment, a plaintiff must show that: (1) the other party was

enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to

permit the other party to retain what is sought to be recovered.  Cruz v. McAneney, 31 A.D.3d

54, 59 (2d Dep't 2006).  Plaintiff need not establish a wrongful act by the person enriched.  Id.

Defendant promised to charge consumers that joined the Rx Savings Program a set fee

for the purchase of 500 specified drugs.  Complaint ¶¶ 13-16; Exhibits 1 and 2.  In doing so,

Defendant itself established the value it placed on the sale of those drugs, namely $8.99 or

$15.99 (depending on the prescription length).  By charging members more than that price,

Defendant collected more money than the value it had itself assigned, and thus Mr. Auerbach

conferred on Rite Aid a monetary benefit above what the prescription drugs were worth and for

what they were offered for sale to the general public.

---

[17] Dillon v. U-A Columbia Cablevision of Westchester, Inc., 292 A.D.2d 25, 27 (2002) is likewise distinguishable, because there the plaintiff did not allege that she paid a price she had not agreed to, but rather that she misunderstood what service the fee was for.  In fact, the plaintiff conceded that she knew how much the fee was represented to be, which was the same fee she paid.  Id. ("[P]laintiff . . . was fully aware that she would be charged a $5 late fee if she did not make timely payment.  Despite this knowledge, she made several late payments and voluntarily paid the late fees.  Having full knowledge of the late fee and the circumstances under which it would be imposed, the plaintiff cannot rely on her misconception of the actual costs associated with late payments to defeat application of the voluntary payment doctrine.").  Similarly, in Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 823 (7th Cir. 2010), the plaintiff's mistake of fact was not that he misunderstood what the proper amount of the charge was, but rather he thought it was a charge made by his wife.  Id.  Gimbel Bros., Inc. v. Brook Shopping Centers, Inc., 118 A.D.2d 532, 535 (2d Dep't 1986) is readily distinguishable because there the plaintiff, a sophisticated commercial party, chose to pay charges it suspected of being improper as a matter of convenience.  Citicorp N. Am., Inc. v. Fifth Ave. 58/59 Acquisition Co., LLC, 70 A.D.3d 408, 408-09 (1st Dep't 2010) is likewise inapposite, as that case involved a sophisticated commercial party that overpaid rent for nine years.

[18]  Plaintiff's unjust enrichment claim is pled in the alternative with respect to his contract claim.  At this early stage of the proceeding, there is no need to force the Plaintiff to choose between these alternative claims for relief.

In fact, it is well settled under New York law that a claim for unjust enrichment lies when a plaintiff is overcharged. See, e.g., Allstate Ins. Co. v. Lyons, No. 11-2190, 2012 WL 517600 (E.D.N.Y. Feb. 16, 2012) ("[W]here one party to a contract accidentally pays another more than the contract requires, the overpayer has an unjust enrichment claim to recover the excess.") (citing Kirby McInerney). See also Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 309 (E.D.N.Y. 2010) ("By plausibly alleging that its account was debited pursuant to an unlawful penalty clause, Spirit Locker has stated a claim for unjust enrichment.").

In arguing that the voluntary payment doctrine precludes an unjust enrichment claim, Defendant essentially argues that Plaintiff should have detected its wrongful overcharge, and so the fault is his. However, it is settled that the alleged negligence of one who overpays does not excuse the defendant from complying with its equitable obligation to return wrongfully collected funds:

> There is a long-established principle that money paid under mistake of material fact may be recovered, unless the party resisting repayment can demonstrate that its position has so changed by reason of the payment as to make repayment inequitable. The voluntary payment doctrine, which bars recovery of payments voluntarily made with full knowledge of the facts and in the absence of fraud or mistake of material fact or law, does not apply here, where the overpayments were clearly made to defendants based on a mistake of fact, namely, the amount of fees actually owed by plaintiff to defendants.

Kirby McInerney, 15 A.D.3d at 233.[19] Given that Plaintiff's mistake of fact was fostered by Rite Aid's improper overcharge, it is against equity and good conscience to allow Defendant to rely on the voluntary payment doctrine to avoid its liability.

---

[19] See also Manufacturers Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 117 (1st Dep't 1990) ("The principle that a party who pays money, under a mistake of fact, to one who is not entitled to it should, in equity and good conscience, be permitted to recover it back is longstanding and well recognized and applies even if the mistake is due to the negligence of the payor.") (citation omitted); Fiorito v. Equitable Life Assur. Soc. of the U.S., No. 3284/90, 1992 WL 12664963 (N.Y. Sup. Ct. Feb. 4, 1992) ("Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake. A party who pays money under a mistake of fact, to one who is not entitled to it, should, in equity and good conscience, be permitted to recover it back, even if

## CONCLUSION

Plaintiffs' claims are more than adequately pled, and therefore this Court should deny

Defendant's motion to dismiss and allow this case to proceed expeditiously to trial, together with

such other and further relief as the Court deems just and proper.

Dated:   White Plains, New York
          May 30, 2012                            Respectfully submitted,

                                                  MEISELMAN, DENLEA, PACKMAN,
                                                  CARTON & EBERZ P.C.

                                                  By:   /s D. Greg Blankinship
                                                        Jeffrey I. Carton
                                                        D. Greg Blankinship
                                                        1311 Mamaroneck Avenue
                                                        White Plains, New York 10605
                                                        Tel: (914) 517-5000
                                                        Fax: (914) 517-5055
                                                        jcarton@mdpcelaw.com
                                                        gblankinship@mdpcelaw.com

                                                        *Attorneys for Plaintiff*

---

the mistake is due to the negligence of the payer.") (citations omitted); <u>NHS National Health Services Inc. v.</u>
<u>Kaufman</u>, 250 A.D.2d 528 (1st Dep't 1998) (same).

<u>**Certificate of Service**</u>

I certify that on the 30th day of May 2012, a true copy of the Opposition To Defendant's

Motion To Dismiss Plaintiff's Amended Complaint was served through the court's ECF System,

by e-mail and by overnight mail upon the following:

        Christopher J Mannion
        Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA 19103-1628
        Email: cmannion@morganlewis.com

                                <u>/s/ D. Greg Blankinship</u>
                                D. Greg Blankinship